# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN MCMILLAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14-CV-717-GKF-PJC ) |
| AT&T UMBRELLA BENEFIT PLAN NO. 1, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1101, *et seq.* ("ERISA"), plaintiff Kevin McMillan seeks judicial review of the post-remand denial of his claim for short term disability under AT&T Umbrella Benefit Plan No. 1. For the reasons set forth below, the court concludes that denial was arbitrary and capricious.

## I. Background

This case returns following remand proceedings before AT&T's benefits administrator, Sedgwick Claims Management Services, Inc. On February 9, 2016, the court reversed Sedgwick's initial denial of Mr. McMillan's request for short term disability benefits. *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 161 F. Supp. 3d 1069 (N.D. Okla. 2016) ("*McMillan I*"). It held that Sedgwick improperly relied on the opinions of physician advisors ("PAs") who failed to consider "the cognitive or travel requirements of [Mr. McMillan's] position." *Id.* at 1079–1081. To that end, the court remanded the case to Sedgwick for proceedings consistent with its opinion. *Id.* at 1081.

### A. Sedgwick's Post-Remand Denial of Benefits

On remand, Sedgwick solicited five (5) additional reviews from Network Medical Review Co., Ltd. ("NMR"), a PA referral organization. For purposes of review, Sedgwick

advised NMR that Mr. McMillan worked as a senior IT client consultant, a job they classified as sedentary. [AR1417–1418]. That classification was expressly rejected by the court in *McMillan I*. *See* 161 F. Supp. 3d at 1080 (explaining that Mr. McMillan's travel duties were inconsistent with the description of his job duties as "sedentary").

Among other things, Sedgwick asked the PAs to address Mr. McMillan's "ability to perform his job requirements, [ ] includ[ing] travel and the ability to perform with high level cognitive functioning" "based on your review of the job description provided." [AR1418]. Sedgwick also asked, "from a cumulative perspective," whether Mr. McMillan "was disabled" considering "all medical information including the previous specialist reviews." [*Id.*]. To aid in these inquiries, Sedgwick provided a job description, which provided in relevant part: "Travel was random based on the project work sold. Generally, it was project work at a client out of state which would require air travel. There is no predetermined travel distance . . . Generally our consultants travel around 20% of the time, but could increase to 100% based on project need and statement of work." [AR277].

NMR expressed concern about the propriety of cumulative reviews. On April 28, 2016, an NMR representative informed Sedgwick that cumulative, "'whole body' determination[s]" are usually reserved for "[g]eneralist[s]," and that "[f]rom a clinical perspective," "many of the special[ists] requested would not be able to comment outside their scope of practice." [AR1420]. Nevertheless, Sedgwick required each specialist to answer the cumulative review question. [AR1419].

The initial PA reports revealed as follows:

- Endocrinology, Diabetes, & Metabolism: Dr. Robert Cooper identified Mr. McMillan's job duties and concluded he was not disabled. [AR1525, 1528].

2

- Pulmonary Disease: Dr. Taj Jiva erroneously referred to Mr. McMillan's job duties as "sedentary," but nevertheless concluded Mr. McMillan could perform the full panoply of his job requirements, including travel and high level cognitive functioning, [AR1511–16]; Dr. Jiva concluded Mr. McMillan's pulmonary issues were chronic but stable, with symptoms of dyspnea, [AR1515]. And he concluded—on a cumulative basis—that Mr. McMillan could perform his job requirements. [*Id.*].

- Ophthalmology: Dr. Andrew Lawton misidentified Mr. McMillan's job duties as "sedentary." [AR1518]. He specifically concluded that Mr. McMillan was not disabled on a visual basis from his employment position, [AR1520], but declined to address cognitive function, explaining that neurological testing would be required to reach an opinion, [*id.*]. Dr. Lawton concluded, from a cumulative perspective, that Mr. McMillan was not disabled. [AR1521].

- Internal Medicine/Cardiovascular: Dr. Beverly Yamour fully identified Mr. McMillan's job duties, but misdescribed them as "sedentary." [AR1506]. While noting Mr. McMillan's severe coronary artery disease, she found he was asymptomatic until February 2014. [AR1506]. Dr. Yamour ultimately concluded, on a cumulative basis, that Mr. McMillan was able to perform all of his job requirements, including travel and high level cognitive functioning. [AR1506–1508].

- Neuropsychology: Dennis Bucholz, Ph.d., failed to fully identify Mr. McMillan's job duties, [AR1497–1502], but concluded that testing did not reveal an inability to perform job requirements, [AR1499]. And though not a medical doctor, Dr. Bucholz also concluded, from a cumulative perspective, that "all available medical information" did not support a finding of disability. [AR1500].

3

On May 3, 2016, Sedgwick transmitted the PA reports to Mr. McMillan. One week later, it notified him of its decision to "uphold the denial of benefits for the period May 21, 2013 through August 25, 2013." [AR1393, 1531]. Sedgwick also advised Mr. McMillan of his right to appeal. [AR1534].

### B. Sedgwick's Post-Remand Denial of Benefits on Appeal

Mr. McMillan filed an administrative appeal with AT&T on August 5, 2016, and submitted additional information and medical records in support of his claim. [AR1541–1647]. Specifically, Mr. McMillan argued that: (1) the PA reviewers ignored pertinent medical history, specifically information from Dr. Terence Grewe about shortness of breath; (2) "records-only" cognitive assessments are fundamentally unreliable; and (3) the PA reviewers offered cumulative medical opinions beyond their areas of training and expertise. [*Id.*].

Mr. McMillan highlighted a determination by the Social Security Administration ("SSA") that he was disabled, effective May 15, 2013. He noted a consultative, face-to-face examination performed by Brian R. Snider, Ph.D., which revealed that Mr. McMillan "would likely have marked difficulty with complex and detailed instructions" and "moderate [to] marked difficulty concentrating and persisting through a normal workday due to memory problems." [AR1617]. To that end, the SSA found that McMillan was moderately limited in understanding and memory, concentration and persistence, social interactions, and the ability to carry out detailed instructions. [AR1629]. Dr. Sharna Wood—who prepared a rebuttal report for appeal on Mr. McMillan's behalf—expressly noted the SSA disability decision in characterizing the reviewers' opinions as "myopic." [AR1610–1612]. Mr. McMillan also identified additional supporting records, including performance reviews, an October 2012 stress test, and a letter from

4

Dr. John Royce stating that "Mr. McMillan was symptomatic with dyspnea on exertion and should be considered disabled as of" April 22, 2013. [AR1643–1644, 453–54, 1568].

In response to Mr. McMillan's administrative appeal, Sedgwick requested reviews from five (5) additional PAs on August 25, 2016. Sedgwick again advised NMR that Mr. McMillan worked as a senior IT client consultant, but this time classified his job requirements as "light" work. [AR1649]. Sedgwick also asked the PAs to opine on Mr. McMillan's ability to perform the travel and cognitive requirements of his job, and to give a cumulative assessment of disability. [*Id.*].

The PA reports on administrative appeal revealed as follows:

- Endocrinology, Diabetes, & Metabolism: Dr. A. Wayne Meikle described Mr. McMillan's job duties as "sitting, typing, talking, walking, computer, and desk work." [AR1652]. Dr. Meikle noted the lack of "objective medical information" to support a finding of disability, and concluded Mr. McMillan could perform the travel and cognitive requirements of his job and was not disabled on a cumulative basis. [AR1654–55]. Dr. Meikle did not reconcile or explain the relationship between his description of Mr. McMillan's job duties and Mr. McMillan's ability to perform more demanding travel requirements.

- Sleep Medicine & Pulmonary Disease: Dr. Heidi Connolly incorrectly classified Mr. McMillan's job duties as "sedentary," and described them as "sitting, talking, and some walking." [AR1657]. She concluded Mr. McMillan could perform the travel and cognitive requirements of his job and was not disabled on a cumulative basis. [AR1658–59]. But Dr. Connolly did not explain the basis for that opinion in light of the actual travel demands of Mr. McMillan's position.

5

- Neuropsychology: Robert L. Collins, Ph.d., erroneously labeled Mr. McMillan's job requirements as "sedentary," and described them as "sitting, talking, and some walking." [AR1663]. However, he did note that the cognitive demands of Mr. McMillan's job required "intense concentration, focus, attention to detail, and the ability to hand multiple tasks concurrently." [*Id.*]. Dr. Collins concluded Mr. McMillan could perform the travel and cognitive duties associated with his position, but did not conduct a consultative examination. He also disagreed with the opinions of Dr. Wood and Dr. Snider, primarily on a methodological basis. [AR1663]. He did not, however, expressly or directly address Dr. Snider's mental status exam findings. [AR172].

- Cardiovascular: Dr. Patrick S. Weston incorrectly characterized Mr. McMillan's job duties as "sedentary," with "sitting, talking, and some walking." [AR1686]. And his evaluation did not address any of the job duties described by Sedgwick. Dr. Weston ultimately concluded that there was insufficient clinical evidence to support a finding of disability. [AR1688–89]. He did not contact Mr. McMillan's cardiologist, Dr. John Roye, to discuss their differing opinions on the medical record.

- Cumulative (Whole Body): Dr. Stephen A. Broomes did not specifically address the job description provided by Sedgwick, but characterized Mr. McMillan's duties as "sitting, typing, talking, walking, computer, and desk work." [AR1676]. He concluded that there was insufficient objective evidence that Mr. McMillan was disabled and incapable of performing his job functions. [AR1681, 1683]. Dr. Broomes did not explain the basis for that opinion in light of the possible "100%" travel requirement of Mr. McMillan's position.

On September 9, 2016, Sedgwick transmitted the additional PA reports to Mr. McMillan. Thereafter, it requested addendum opinions from the PAs addressing the specific criticisms raised in Mr. McMillan's appeal letter. [AR1691].

The addenda were provided to Mr. McMillan on September 22, 2016. In relevant part, they contained the following findings: for the first time, Dr. Collins asserted Dr. Snider's psychological assessment should be considered a lower bound estimate of cognitive ability because it was a "screening assessment" conducted in the "medico-legal context," [AR713–15]; Dr. Weston acknowledged objective evidence of cardiovascular abnormality, but claimed it did not account for shortness of breath on exertion, [AR721]; he did, however, acknowledge that symptoms of dyspnea are subjective, [*id.*]; Dr. Broomes reiterated his conclusion that objective evidence did not support a finding of disability, [AR1719].

On October 7, 2016, Sedgwick requested an additional addendum opinion from Dr. Broomes as the "consensus reviewer." Sedgwick asked Dr. Broomes to confirm that Mr. McMillan's job duties were reviewed, and to assess whether travel or cognitive functioning responsibilities would change his opinion. [AR1893–96]. Dr. Broomes responded on October 12, 2016, with the review panel's conclusion that objective evidence did not support any limitations from a cumulative perspective. [AR1899–90]. He explained that although Mr. McMillan "had significant medical issues that required ongoing medical care," "none . . . would preclude him from performing a desk job" or "from travelling 20% or performing with a high level of cognitive functioning." [*Id.*].

Recognizing the panel description of Mr. McMillan's job duties was incomplete, Sedgwick requested yet another addendum to address whether a "100%" travel requirement would change the panel's opinion. [AR1410, 1907]. Dr. Broomes responded on October 20,

7

2016, and confirmed that "[e]ven if travel was increased to 100%," the objective medical evidence "still does not support the need for restrictions and limitations." [AR1913]. It does not appear that Dr. Broomes reconvened the review panel before providing that information. [*Id.* at 1913–14].

Sedgwick reaffirmed its denial of STD benefits by letter dated November 1, 2016. [AR1616–18]. In doing so, it expressly relied on the opinions of Drs. Meikle, Connolly, Collins, Weston, and Broomes. [*Id.*]. This request for review followed.

## II. Legal Standard

Where an ERISA plan "grants a plan administrator or [ ] delegate discretion is interpreting the terms of, and determining the grant of benefits under, [a benefits] plan," the court must "uphold the decision unless arbitrary and capricious." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006); *accord McMillan I*, 161 F. Supp. 3d at 1079. "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002). And in making this determination, the court considers the record as a whole, "'tak[ing] into account whatever . . . fairly detracts from'" a benefits administrator's decision. *See id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (quotation marks and citation omitted)). "Under the arbitrary and capricious standard," the court "will uphold an administrator's decision so long as it is predicated on a reasoned basis." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (internal quotation marks omitted).

## III. Analysis

In an ERISA case, the text of a benefits plan frames the terms of a court's inquiry. *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 804 (10th Cir. 2004); *McMillan I*, 161 F. Supp. 3d

at 1079. As relevant here, AT&T Umbrella Plan No. 1 provides that an employee is totally disabled if "because of Illness or Injury, [he] is unable to provide all of the essential functions of [his] job." [AR15]. In such circumstances "it is essential that any rational decision to [deny] disability benefits . . . consider whether the claimant can actually perform [his] specific job requirements." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 855 (3d. Cir. 2011); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1284 (10th Cir. 2002) ("A key determination in the inquiry before the administration was whether [claimant] could perform all the essential duties of his job."); *McMillan I*, 161 F. Supp. 3d at 1079. To that end, a benefits administrator acts arbitrarily and capriciously if it "fail[s] to consider one or more of the claimant's essential job functions." *McMillan I*, 161 F. Supp. 3d at 1079 (collecting cases).

Sedgwick's reviewers failed to do so here. AT&T argues that Sedgwick provided—and PAs reviewed—Mr. McMillan's travel duties. [Doc. No. 64, pp. 24–27]. But as in *McMillan I*, the mere fact a job description was provided or generally referenced does not mean that a reviewer meaningfully considered or related it to their medical conclusions in the case. *See McMillan I*, 161 F. Supp. 3d at 1078–80. And there is reason to doubt that any such consideration occurred on remand: the description of Mr. McMillan's job as "sitting, typing, talking, walking, computer, and desk work" in all of the PA reports, and classification of his position as "sedentary" in three (3) of the reports, are inconsistent with the "light" classification provided by Sedgwick and this court's decision in *McMillan I*, [AR1649]; *McMillan I*, 161 F. Supp. 3d at 1079–80 (holding that description of Mr. McMillan's job as "sedentary" and as involving "sitting, typing, and talking" was incomplete); and their opinions on Mr. McMillan's ability to travel largely parrot language provided in question form by Sedgwick, without

9

specifically reconciling that conclusion with the medical evidence, *compare* [AR1649] *with* [AR1654–1655, 1658–1659, 1688–1689, 1681–1683].

Indeed, the only reviewer to consider a possible "100%" travel requirement was Dr. Broomes, and only after Sedgwick requested multiple addenda. [AR1410, 1691, 1907]. Initially, the review panel—led by Dr. Broomes—concluded none of Mr. McMillan's limitations "would preclude him from performing a desk job" or "from travelling 20%." [AR1899–90]. Of course, that is inconsistent with a potential travel requirement of up to "100%," a figure provided and purportedly considered by the panel reviewers. *See* [AR276]; [Doc. No. 64, pp. 24–27]. So, upon request from Sedgwick, Dr. Broomes updated the panel opinion to a finding of non-disability "[e]ven if travel required was increased to 100%." [AR1907, 1913]. He did so, but it does not appear that he reconvened the review panel before providing that opinion. [AR 1913–14]; [Doc. No. 61, p. 26–27, ¶ 82]; [Doc. No. 64, p. 21].

On this record, AT&T's denial of benefits must be reversed. At best for AT&T, the record is "opaque" and "there is simply no way to tell whether [Sedgwick's] reviewers were applying a correct definition" of Mr. McMillan's job duties, "or some other conception." *See McDonough v. Aetna Life Ins. Co.*, 783 F.3d 374, 380 (1st Cir. 2014); *accord McMillan I*, 161 F. Supp. 3d at 1080. At worst, the record shows that the reviewers did not properly consider the travel requirements of Mr. McMillan's job, and that Sedgwick continued to feed them more targeted questions until it secured specific language supporting a denial of benefits. In either case, the denial of benefits was arbitrary and capricious.

But Sedgwick's decision is problematic in another respect as well. It lacks substantial evidence. Dr. Royce and Dr. Grewe—both of whom examined Mr. McMillan—concluded he suffered from disabling shortness of breath on exertion. [AR391, 395–398, 403–405, 453–454,

1568, 1643–1644]. And that is confirmed—in part—by one of Sedgwick's own reviewers, Dr. Jiva, who noted Mr. McMillan showed symptoms of dyspnea. [AR1515]. Sedgwick responds that Mr. McMillan's symptoms were not supported by objective evidence. [Doc. No. 64, pp. 26, 30–32]. But that is not what the plan requires. And Sedgwick admits as much. [*Id.* at 32] ("While the Plan in this case does not expressly require 'objective' medical evidence . . . .").

By its plain terms, the plan requires only "[m]edical [d]ocumentation of [p]atrial or [t]otal disability," defined as "medical . . . opinion from treating or reviewing [p]hysician[s] . . . supported by diagnostic tools and examinations." [AR15, 39]. Mr. McMillan provided opinions to that effect. "By impos[ing] a standard not required by the plan's provisions, . . . [Sedgwick's] actions [were] arbitrary and capricious." *See Dove v. Prudential Ins. Co. of Am.*, 364 F. App'x 461, 465 (10th Cir. 2010) (quotation marks and citation omitted); [Doc. No. 44] (Order, *Leffler v. Aetna Life Ins. Co.*, Case No. 15-CV-154-GKF-tlw, at *14 (N.D. Okla. June 13, 2017)). In this way, Sedgwick "moved the target" for evidence required to show disability under the plan to discount the opinions of Dr. Grewe and Dr. Royce. *See Dove*, 364 F. App'x at 465; [Doc. No. 44] (Order, *Leffler*, Case No. 15-CV-154-GKF-tlw, at *14); *Holmstrom v. Met. Life Ins. Co.*, 615 F.3d 758, 775 (7th Cir. 2010); *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004); *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 237 (1st Cir. 2006). That warrants reversal. *Cf. Allison v. Bank One-Denver*, 289 F.3d 1223, 1236 (10th Cir. 2002) ("We have repeatedly rejected efforts to stray from the express terms of a plan, regardless of whom those express terms may benefit.").[1]

---

[1] Because the court concludes reversal is warranted based on Sedgwick's consideration of Mr. McMillan's travel duties, it need not address whether substantial evidence supported the determination that Mr. McMillan met the cognitive requirements for his job.

11

Ordinarily, when a "plan administrator 'fail[s] to make adequate findings or to explain adequately the grounds of its decision' the proper remedy 'is to remand the case to the administrator for further findings or explanation.'" *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (quoting *Caldwell*, 287 F.3d at 1288). But this case has gone on long enough. Giving Sedgwick another mulligan would reward "sloppy plan administrators[ ]at the expense of . . . the courts and plan participants." *See Fleet v. Ind. Fed. Credit Union Emp. Ben. Plan*, No. 1:04CV0507DFHTAB, 2005 WL 1183177, at *3 (S.D. Ind. May 18, 2015). And "[i]t would be a terribly unfair and inefficient use of judicial resources to continue remanding a case to Sedgwick to dig up new evidence until it found just the right support for its decision to deny an employee [ ] benefits." *See Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 832 (7th Cir. 2004). In short, there is no reason to order another remand to cure a defect that has persisted through two administrative appeals. *See Fleet*, 2005 WL 1183177, at *4. And AT&T offers no argument to the contrary. As a result, the court awards retroactive reinstatement of benefits.

WHEREFORE, Sedgwick's denial of short term disability benefits to Mr. McMillan under AT&T Umbrella Plan No. 1 is reversed and Mr. McMillan is awarded retroactive reinstatement of benefits.

IT IS SO ORDERED this 14th day of August, 2010.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT